UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

CIVIL ACTION NO. 06-CV-297-JMH

RONALD Y. BIRDSONG, JR.,                                    PLAINTIFF,

VS:                    <u>**MEMORANDUM OPINION AND ORDER**</u>

RON BISHOP, *Jailer*, ET AL.,                              DEFENDANTS.

Before the Court are several pending matters:

(1)  The "Motion for Summary Judgment" [Record No. 75] filed by counsel for Defendant Ron Bishop;

(2)  The "Response" (to Bishop's Motion for Summary Judgment) [Record No. 81] filed by Ronald Y. Birdsong, Jr., the *pro se* plaintiff;

(3)  The "Motion for Summary Judgment" [Record No. 82] filed by counsel for Defendants Rex McConnell, M.D., and Jonathan Bowen;

(4)  The "Reply" (to Birdsong's "Response") [Record No. 83] filed by counsel for Defendant Ron Bishop;

(5)  The "Motion for Summary Judgment" [Record No. 84] filed by counsel for Defendants Larry Chandler and Scott Haas; and

(6)  The "Motion for Summary Judgment" [Record No. 85] filed by counsel for Defendants Frederick Kemen, M.D. and Lawrence Duvall, M.D.

PROCEDURAL HISTORY

On September 12, 2006 Plaintiff Birdsong filed the instant civil rights complaint under 42 U.S.C. § 1983 [Record No. 1].  At that time, Birdsong was confined in the Fayette County Detention Center ("FCDC") in Lexington, Kentucky. Birdsong is now confined in the Kentucky State Reformatory ("KSR") which is located in LaGrange, Kentucky.

Birdsong named Ron Bishop, Jailer of the FCDC; Jonathan Bowen, the Medical Supervisor of the FCDC; and  Dr. Rex McConnell as defendants. Birdsong alleged that surgery was necessary to correct his umbilical hernia condition and that the defendants refused to authorize it.[1]  He alleged that the refusal violated his rights under the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment.

The original  defendants to this action filed Answers to the Complaint [Record No. 17, 24 and 32]. On or about June 21, 2007, Birdsong was transferred to the KSR. Plaintiff Birdsong alleged that the warden of the KSR, his medical care providers there, and the Director of the Kentucky Department of Corrections ("KDOC") violated the Eighth Amendment by refusing to authorize corrective surgery. He asked to name all of them as additional defendants.

---

[1]

An umbilical hernia is an outward bulging (protrusion) of the abdominal lining or part of the abdominal organ(s) through the area around the belly button. *See* Answers.com ("umbilical hernia").

2

Birdsong was allowed to name the following persons as additional defendants: (1) Larry Chandler, the Warden of the KSR; (2) Scott Haas, the Director of the KDOC; (3) Lawrence Duvall, M.D.; and (4) Dr. Frederick W. Kemen, M.D. All filed Answers to the Amended Complaint [*See* Record Nos. 63-65].

Pursuant to an Amended Scheduling Order entered on March 17, 2008 [Record No. 60], the discovery deadline was extended until July 17, 2008, and the dispositive motions deadline was extended until August 17, 2008. Discovery activity ensued between April 25, 2008 and July 15, 2008 [*See* Record Nos. 66-74]. Defendant Ron Bishop, the Jailer of the FCDC, filed his motion for summary judgment on July 23, 2008 [Record No. 75].

On August 4, 2008, ten days after Defendant Bishop filed his motion for summary judgment, Birdsong propounded a new series of discovery requests on the defendants. He asserted that he needed to conduct additional discovery, and complained that the defendants were ganging up on him by filing multiple motions for summary judgment.

On August 14, 2008, the Court entered an Order striking Birdsong's purported discovery requests. The Court determined that Birdsong's requests had been filed after the discovery deadline had expired and further noted that Birdsong had not sought leave of Court to propound the discovery requests <u>prior</u> to the expiration of

the deadline [*See* Record No. 86].[2]

While that activity was transpiring, the other defendants were filing their respective motions for summary judgment. On August 13, 2008, Defendants Jonathan Bowen and Rex McConnell, M..D, filed a joint "Motion for Summary Judgment" [Record No. 82]. On August 14, 2008, Defendants Larry Chandler and Scott Haas filed a joint "Motion for Summary Judgment" [Record No. 84]. On August 15, 2008, Defendants Frederick W. Kemen, M.D., and Lawrence Duvall, M.D., filed a joint "Motion for Summary Judgment"[Record No. 85].

## SUMMARY OF RELEVANT FACTS

The relevant facts began in April of 2006. After complaints of stomach pain, Birdsong was taken to the University of Kentucky ("UK") Emergency Department for a medical consultation. Dr. Charles A. Eckerline found a small umbilical hernia which he described as "suggestive of a partial small bowel obstruction." Dr. Eckerline's report states that Dr. Anderson performed a reduction of the plaintiff's hernia, which gave him immediate relief. Dr. Eckerline described the plaintiff's status, upon discharge, as follows:

> **TX/PLAN:** Dr. Anderson reduced his hernia without any difficulty. His pain went away immediately. We have

---

[2]

In its Order of September 5, 2008, [Record No. 89], the Court explained in detailed why it refused to alter or amend its Order of August14, 2008. The Court will not reiterate that discussion here, as the relevant facts and legal analyses are set forth fully in that Order.

> observed him in the ED.  He is pain free and completely
> asymptomatic.  We have suggested followup in the general
> surgery clinic for evaluation for repair and explicit
> instructions to return should he have any symptomatology.
> Currently he is reduced and asymptomatic.

[Record No. 2, p.9].

The UK Emergency Department records from April 5, 2006 reveal that Birdsong engaged in extreme exercise in the form of lifting heavy weights and performing six hundred (600) sit-ups per day [Record No.2, p. 8 and Record No. 84-4,p.3].

Birdsong alleges in his Answers to Interrogatories that based on the April 5, 2006, ER report prepared by Drs. Eckerline and Anderson, the defendants were "ordered to correct his 'umbilical hernia' after diagnosis by of the UK Medical Center Emergency Department, and the only treatment that would stop present and future pain and further serious complications." [Record No. 31, p.1]. He alleges that he has sustained irreparable physical injury caused by the defendants' refusal to authorize surgery to correct the hernia condition.

Following his discharge from UK in April of 2006, Birdsong continued to complain of stomach pain and demanded surgery to rectify the problem. He was seen on several occasions by FCDC medical personnel.  On May 26, 2006, Birdsong complained of pain related to the hernia. However, he stated at that time that he was "always able to push it back in" using the instructions that were provided to him at the UK Medical Center [Record No. 82-5, p. 10].

On June 29, 2006, Birdsong again complained of pain. He was diagnosed with a "very small" umbilical hernia, and Dr. McConnell again advised the Plaintiff how to self-reduce the hernia [*Id.*, p.9]. On September 22, 2006, Birdsong again reported pain associated with the hernia. Dr. McConnell again examined the Plaintiff, and did not find any evidence of bowel instruction, incarceration, or protrusion [*Id.*, pp-8-9]. When Dr. McConnell attempted to explain the condition to Birdsong, he walked out and insisted that he did not need intervention [*Id*, p.7].

Birdsong complained of pain on October 10, 2006 [*Id.*, pp. 6-7]. He was referred to the University of Kentucky Clinic, where he was examined by Richard W. Schwartz, M.D., on October 25, 2006. Dr. Schwartz suggested repair of the hernia, but he noted that there was no evidence of bowel incarceration, obstruction, or strangulation [Record No. 66-2, p.2].

Birdsong did not seek any further medical attention from Dr. McConnell following the examination at the UK Medical Clinic on October 25, 2006. He was offered chronic care visits at the FCDC following the examination by Dr. Schwartz. He received treatment from chronic care on January 22, 2007, but refused treatment offered to him by chronic care on November 28, 2006; December 22, 2006; and March 12, 2007 [Record No. 82-6, p.11-14]. As a result of his refusal, chronic care visits were discontinued.

Birdsong was transferred to the KSR on or about June 21, 2007.

Birdsong was first seen by Dr. Duvall on August 20, 2007, for complaints related to asthma and allergies , not his hernia [Record No. 85-9, p.2]. During the physical exam, Dr. Duvall also noted the presence of a reducible umbilical hernia [*Id*]. Birdsong had no complaints related to his hernia at that time.

Birdsong was next seen by Dr. Duvall on September 20, 2007 for his asthma [Record No. 85-10, p.2].  Birdsong had no complaints related to his hernia at that time. [*Id*.]. On September 25, 2007 Birdsong filed a medical grievance, indicating that a doctor from the University of Kentucky had ordered him to have hernia surgery [Record No. 84-5, p.2].  Birdsong alleged that the KSR defendants were violating his rights by subjecting him to cruel and unusual punishment [*Id*].  The KSR Grievance Counselor denied the grievance for the following reasons:

> I have reviewed your medical records from your ER visit at UK in April 2007. You were sent to the ER because of concern about appendicitis. You were found to have an umbilical hernia (bowel protruding through a weak spot around the belly button). Dr. Anderson reduced the hernia (pushed the bowel back into the abdominal cavity), and your pain went away immediately. **You saw Dr. Duvall on 8/20/07 for asthma, and he confirmed that your hernia can be reduced easily. Reducible hernias do not require surgical correction to preserve health. Therefore DOC policy does not permit such repair at state expense. You may of course, have it repaired at your expense if you wish.**

[Record No. 84-5, p.2] (Emphasis added).[3]

---

[3]

Dr. F.W. Kemen also signed the denial of the Informal Resolution [*Id*].

7

Birdsong appealed, stating that he was entitled to the surgery as a matter of right [Record No. 84-6]. On October 18, 2007, the "Health Care Grievance Committee" issued Findings and Recommendations upholding the Informal Resolution [Record No. 84-7]. Birdsong appealed [# 84-9]. On November 26, 2007, Scott Haas, M.M., Medical Director of the KDOC, issued the "Health Care Grievance Final Administrative Review" which denied the appeal [# 84-9]. Dr. Haas explained that Birdsong was incorrect as to policy and informed him that " Policy dictates that all care recommendations by an outside provider be reviewed by a DOC provider for appropriateness of care within a correctional facility."[*Id.*].

Between January 16, 2008 and March 28, 2008, Birdsong visited the KSR medical department seven times, complaining about his reducible hernia [*See* Record Nos. 84-10 through 84-15, and Record Nos. 85-11 though 85-15]. During these visits, the medical staff taught Birdsong how to reduce his hernia via massage, provided an abdominal binder with instructions for its use, administered medication, and monitored and evaluated Birdsong's condition.[4]

---

[4] On January 25, 2008, Birdsong  was seen by Dr. Duvall for complaints of pain at the site of his umbilical hernia [Record No. 85-12, p.2]. Dr. Duvall was not certain if the hernia was incarcerated and referred Birdsong to Dr. White to assess its reducibility. [*Id.*]. Dr. Steven White saw Birdsong on the same day and determined that the hernia was in fact reducible [Record No. 85-13]. At that time, Dr. White taught Birdsong how to reduce the hernia with abdominal relaxation and gentle massage. He also

Birdsong continued to demand surgery. He received another consult on March 28, 2008 [Record No. 84-16]. On March 28, 2008, Birdsong was seen by Practitioner Roy Washington for complaints related to his hernia [Record No. 85-14, p.2]. Practitioner Washington noted that there was a marble-sized hernia which was easily reducible in the clinic office. [*Id*].

On April 14, 2008, the KSR's managed care company denied Birdsong's request for surgery, finding that it was not a medical necessity [Record No. 84-17]. The denial contained a handwritten notation stating "hernia is reducible."

<u>MOTION FOR SUMMARY JUDGMENT FILED BY</u>
<u>DEFENDANT RON BISHOP [RECORD NO. 75]</u>

Ron Bishop, the FCDC Jailer, asserts four arguments in support of his motion for summary judgment. First, Bishop argues that he is not liable to Birdsong under § 1983 because he had no personal knowledge of Birdsong's medical situation of the time of Birdsong's initial complaint. He further asserts that he was not involved in any of the medical decisions regarding Birdsong while he was confined in the FCDC.

Bishop cites numerous cases, including but not limited *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978) and *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th

---

obtained a binder for Birdsong and taught him the proper positioning and usage of the binder. [*Id*].

Cir. 1989), in support of his argument that as a supervisory official, he cannot be held liable in his individual capacity absent a showing that he personally caused the deprivation of a federal right. Bishop argues that the cases he cited instruct that supervisory liability cannot be imposed under § 1983 where the allegation is based upon a mere failure to act. In essence, Bishop alleges that *respondeat superior* is not available under § 1983.

Bishop further notes that any claims asserted against him in his official capacity are claims against the Lexington Fayette Urban County Government itself ("LFUCG"). He argues that other than Birdsong's bare and unsubstantiated allegations that he was refused medical treatment due to "money issues with the jail," Birdsong has produced no proof that the LFUCG had a custom or policy that was the moving force behind the alleged violation of his constitutional rights.

Second, Bishop notes that Birdsong has erroneously asserted a substantive due process  claim under the Fourteenth Amendment of the United States Constitution. Bishop argues that when a prisoner alleges that he was denied medical care or challenges the conditions of his confinement, such claims must be analyzed under the Eighth Amendment's deliberate indifference standards, not the Fourteenth Amendment.

Third, Bishop argues that Birdsong has not satisfied either of the criteria required for establishing a claim of denied medical

10

treatment under the Eighth Amendment. Bishop states in order to prove deliberate indifference, a prisoner must satisfy both an objective and a subjective component. The objective component requires that the alleged deprivation of medical care is "sufficiently serious." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Bishop contends that Birdsong's chronic umbilical hernia condition does not qualify as a "sufficiently serious" medical condition.

Bishop cites *Napier v. Madison Co.*, 238 F.3d 739, 742 (6th Cir. 2001), which holds that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994)) Bishop contends that Birdsong has failed to produce medical evidence which would establish that either a delay or refusal to approve the surgery has detrimentally affected his medical condition.

Bishop also referred to an affidavit filed earlier in this action, which Defendant Rex McConnell, M.D., signed on October 30, 2007 [filed at Record No. 38-2 and Record No. 75-7]. In that Affidavit, Dr. McConnell stated that "surgical correction of an umbilical hernia is an elective procedure that is not necessary to preserve health. Failure to perform this elective surgery would

11

not detrimentally impact the inmate." [*Id*.]. Bishop noted that after Birdsong's transfer to the KSR in June of 2007, medical personnel there concurred that surgery was not medically warranted. Bishop noted that KSR medical staff denied the request for surgery.

Bishop further asserts that even if Birdsong's umbilical hernia condition were considered to be a sufficiently serious medical condition under the Eighth Amendment, Birdsong has failed to satisfy the subjective prong of the "deliberate indifference" test. Bishop explains that under the subjective prong of the test, a prison official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Bishop reiterates that he did not know about Birdsong's situation at the time of the initial complaint. He states that he was not involved in any decisions regarding Birdsong's medical treatment. He argues that based on his lack of knowledge, he did not disregard an excessive risk to Birdsong's health or safety. Bishop notes that healthcare care providers employed by Correction Medical Services (the FCDC's contract medical provider) reviewed Birdsong's demands for surgery and determined that surgery was not

12

warranted [Record No. 75-6].

Bishop further stresses that even if he had been aware of the medical issues involving Birdsong (which he strongly denies he did not), he was entitled to rely on the professional opinions of licensed medical professionals hired to address inmates' medical needs and treatment. He cites several cases (such as *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993) and *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988) in which jail wardens were exonerated from § 1983 liability where they relied on the medical decisions of trained physicians.

Fourth and finally, Bishop argues that he is entitled to qualified immunity. A government official performing a discretionary function enjoys qualified immunity provided his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).

BIRDSONG'S OBJECTION TO BISHOP'S
MOTION FOR SUMMARY JUDGMENT [RECORD NO. 81]

Birdsong responded to Defendant Bishop's Motion for Summary Judgment. Birdsong argued that Bishop had to be aware of his (Birdsong's) medical condition because his medical appointments and absences from the Detention Center "ultimately had to be approved by Defendant Bishop." [Record No. 81]

Birdsong stated that "before plaintiff could have ever left

13

the secured confinement of Lexington-Fayette County Detention Center it had to be approved by defendant Bishop. This approval would have necessarily encompassed an inquiry why a plaintiff needed to go the University of Kentucky for medical reasons" [*Id*]. Bishop argued that there are material issues of fact which would preclude summary judgment in favor of Defendant Bishop.

<u>DEFENDANT BISHOP'S REPLY
TO PLAINTIFF'S OBJECTION [RECORD NO.83]</u>

Bishop disputes Birdsong's assertions and states that Birdsong offers no evidence to substantiate his claims. Bishop states that Birdsong was mistaken when he alleged that he (Bishop) had to be aware of Birdsong's medical condition because he was the person responsible for approving Birdsong's absences from the FCDC [Record No. 83].

Bishop submitted a sworn affidavit, dated August 14, 2008, in which he stated that his approval was not necessary in order to allow inmates to attend routine medical appointments [Record No. 83-2]. He stated that he did not approve Birdsong's medical appointments or his absence from the FCDC to attend same. Finally, Bishop reiterated his prior assertions that he had no personal knowledge about Birdsong's medical condition, and that he was not involved in decisions concerning the medical treatment provided to Birdsong.

<u>DEFENDANTS BOWEN AND MCCONNELL'S
MOTION FOR SUMMARY JUDGMENT [RECORD NO.82]</u>

14

Defendants Jonathan Bowen and Rex McConnell, M.D., have filed a joint motion for summary judgment. They argue that Birdsong has failed to establish that either of them acted with "deliberate indifference" to Birdsong's medical condition under the standards enunciated in *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994).

First, citing *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992), they argue that the objective component of the deliberate indifference test cannot be satisfied because Birdsong's medical condition was not a sufficiently serious one. They argue that a simple hernia, which can  be easily reduced without surgical intervention, is not a serious medical condition. They note that Birdsong's medical history reveals that he was shown on numerous occasions how to reduce his hernia. Bowen and McConnell further assert that four different doctors (McConnell Eckerline, Anderson, and Schwartz), determined that Birdsong's hernia is small and caused no evidence of bowel obstruction, protrusion, or strangulation.

Second, Bowen and McConnell argue that subjective component of the deliberate indifference standard cannot be met because they did not disregard a substantial risk of danger to Birdsong. They note that while confined at the FCDC Birdsong was sent twice to the UK Medical Center; that he was treated five times at the FCDC; and that he was afforded chronic care treatment. They argue that they

15

did not disregard Birdsong's hernia condition.

DEFENDANTS CHANDLER AND HAAS'S<br>
MOTION FOR SUMMARY JUDGMENT [RECORD NO.84]

Chandler, the Warden of the KSR, and Dr. Scott Haas, the Director of the KDOC, have filed a joint motion for summary judgment. First, like Defendant Ron Bishop, Defendant Chandler asserts that he is not a medical care professional. He asserts that he was not involved in Birdsong's medical treatment and was unaware, until this lawsuit, which Birdsong was alleging that he was denied medical care at the KSR  Chandler cites various cases which hold that *respondeat superior* liability cannot be imposed against supervisors under § 1983. Second, Chandler further argues that even if he had wanted to order the surgery which Birdsong demanded, he did not have the legal authority to do so. Third, Chandler asserts that Birdsong received ongoing and appropriate medical care and that as a result, neither he nor the medical staff at the KSR demonstrated deliberate indifference to his condition.

Dr. Haas first argues that he was not deliberately indifferent to Birdsong's medical condition. He states that Birdsong was promptly and properly evaluated by the medical staff at the KSR and further notes that Birdsong continues to be treated at the present time.

Dr. Haas clarifies that he did not directly treat Birdsong. His duties entailed reviewing the record when Birdsong appealed his medical grievance at the KSR.  He states that at that time

16

(November 26, 2007), he determined that Birdsong was receiving the proper medical. As a physician, he described Birdsong's exercise habits of weight lifting and doing 600 sit-ups per day, while complaining of a hernia condition, as "outrageous" [Record No. 84-2, p.5].

Finally, Dr. Haas notes that Birdsong has a difference of opinion as to the best course of treatment for his condition: Birdsong demands corrective surgery while his providers have consistently concluded that a conservative course of treatment is sufficient. Dr. Haas cites the case of *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976), and numerous other cases, for the proposition that where a prisoner has received some medical treatment and the dispute is only over the adequacy of the medical, he has not stated a valid claim under § 1983.

<u>DEFENDANTS CHANDLER AND HAAS'S</u>
<u>MOTION FOR SUMMARY JUDGMENT [RECORD NO.85]</u>

Frederick W. Kemen, M.D., and Lawrence Duvall, M..D., have filed a joint motion for summary judgment. Both doctors were involved in Birdsong's medical treatment after he was transferred to the KSR. They concur with the other medical defendants that a small, reducible hernia is not a life- threatening condition and does not require surgical intervention. According to Drs. Kemen and Duvall, "Surgery under the circumstances presented would be purely elective in nature and carry with it its own set of potential risks." [Record No. 85-2, p.2].

17

They agree with the determination reached by the KSR's managed care company that a small reducible hernia is not medically necessary. They further emphasize that Birdsong's hernia was not strangulated and that he had no complaints of abdominal distention or lack of bowel sounds [*Id.*, p.4]. Dr. Duvall states that he appropriately assessed Mr. Birdsong's medical complaints (for asthma, allergies and his reducible hernia). When Dr. Duvall could not determine if Birdsong's hernia was incarcerated, he referred Birdsong to Dr. Steven White.

Dr. White subsequently determined that the hernia was easily reducible and did not require surgical intervention. Dr. White provided the plaintiff with a binder as well as training on how to reduce his hernia as necessary.  Accordingly, Dr. Duvall asserts that he was not deliberately indifferent to Birdsong's complaints, where he sought consultation by another physician and agreed with other physicians' choice of conservative treatment.

Dr. Duvall states that "It is ironic that Mr. Birdsong has claimed that he was treated with deliberate indifference when Mr. Birdsong would have not received such timely attention to his health needs had he not been in prison. Both Dr. Kemen and Dr. Duvall have provided timely and appropriate assessments of the plaintiff and recommended a conservative course of treatment for his umbilical hernia. The Eighth Amendment requires nothing more."[*Id.*, p.8].

18

Dr. Kemen adopts the arguments advanced by Dr. Duvall. Dr. Kemen he states that he (Dr. Kemen) was not identified within the KDOC's records as one of Birdsong's providers.[5] He notes that Practitioner Washington was Birdsong's primary care provider at the KSR. Based on the history of medical treatment which Birdsong has received, Defendants Kemen and Duvall argue that neither aspect of the deliberate indifference standard has been established.

<u>DISCUSSION</u>
1. <u>Standards for Summary Judgment Motion</u>

Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

---

[5] Dr. Kemen did sign the Grievance Counselor's denial of Birdsong's Informal Resolution Grievance Form [Record No. 84-5].

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

A district court is required to examine a motion for summary judgment to ensure that a moving party has discharged his burden. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).

<u>DISCUSSION</u>
2. <u>Failure to Respond to Three Motions for Summary Judgment</u>

Other than attempting to propound the belated discovery requests on August 4, 2008, Plaintiff Birdsong filed no response to the "Motions for Summary Judgment" filed by Defendants Bowen and McConnell, M..D. [Record No. 82]; Defendants Chandler and Haas [Record No. 84]; and (3) Defendants Kemen and Duvall, M.D.[Record No. 85].

In *Scott v. State of Tenn.*, 878 F.2d 382, 1989 WL 72470 (6th Cir.1989), the Sixth Circuit held that "if a plaintiff fails to

20

respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." (citing *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd*, 577 F.2d 740 (6th Cir. 1978) (unpublished per curiam)).

Nineteen years later, on May 15, 2008, the Sixth Circuit quoted from *Scott* and *Elmore*, *inter alia*, in affirming the dismissal of a complaint upon an unopposed Motion to Dismiss in the United States District Court for the Northern District of Ohio. *Humphrey v. United States Attorney General's Office*, 2008 WL 2080512 (6th Cir. 2008) (slip op.). The Sixth Circuit affirmed the district court's dismissal. It stated the waiver principle as stated in *Scott* and also found that the non-responsive plaintiff's "claims are not well taken." *Id*. at *3.[6]

The arguments set forth in the three unopposed motions in this case are therefore not controverted. Applying the *Humphrey* procedure to this case, Birdsong's failure to respond to three of the four motions for summary judgment, alone, would warrant the entry judgment in favor of moving defendants. Long before the three motions were filed, Birdsong filed Answers to

---

[6]

The court stated as follows: "Thus, where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived." *Humphrey*, 2008 WL 2080512 at *3.

Interrogatories, in which he attempted to argue the merits of his claim [Record No. 66]. Even after fully considering the information contained there, the Court finds that for the following reasons, three unopposed motions are well taken and are supported factually and legally.

3. <u>Summary Judgment in favor of Ron Bishop, Larry Chandler and Scott Haas</u>
A. <u>Lack of Personal Involvement</u>

Birdsong attempts to assign liability to FCDC Jailer Bishop and KSR Warden Chandler under the principle of *respondeat superior*. In essence, Birdsong argues that because Bishop was the jailer of the FCDC, and because Chandler was the warden of the KSR, they are liable to him. He claims both defendants were automatically vested with knowledge of, and involvement in, all issues concerning his medical treatment, demands for surgery and the grievance process.

In his affidavit, Bishop adamantly disputes that he was aware of Birdsong's medical condition. He states that he was not involved in the medical treatment rendered to Birdsong; was not involved in the grievance process which ensued at the FCDC; and did not approve Birdsong's absences from the FCDC for medical appointments. In his reply to that affidavit, Birdsong stated that Bishop's statements were "preposterous," but he offered nothing to substantiate his conclusory allegations that Bishop either knew or should have known about his medical issues.

As the records reveal that the FCDC contracted with CMS to

22

provide medical care to FCDC inmates, there is nothing in the record that would suggest that Bishop was personally involved either with Birdsong's medical issues or with the FCDc grievance process.  Lacking such active involvement, Birdsong has only the theory of *respondeat superior* upon which to rely in asserting a claim against defendant Bishop.

Similarly, Defendant Chandler argues in his response that (1) he is not a licensed medical professional; (2) he was not involved in any step of the medical grievance process; and (3) Birdsong never specifically communicated with him about his displeasure with his (Birdsong's) medical treatment [Record No. 84-2, p. 3]. Chandler notes that medical treatment for inmates at the KSR is also outsourced to contract medical providers. He explains that because of that fact, even if he had wanted to order the medical treatment Birdsong demanded, he could not have done so.  As noted, Birdsong did not file a response to Chandler's motion for summary judgment. Thus, Chandler's disclaimer of knowledge about Birdsong's medical status, his involvement in the medical treatment, and the grievance process, are not controverted.

As Bishop and Chandler correctly note, § 1983 liability cannot be imposed against a supervisor under the theory of *respondeat superior*.  This theory of recovery has been rejected as a basis for a §1983 claim.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691-694; 98 S.Ct. 2018 (1978). The Sixth Circuit has

23

stated, "The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hayes v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982). As there is nothing in the record that substantiates Birdsong's claim of active involvement on the part of either Bishop or Chandler, summary judgment in favor of these defendants is appropriate.

Finally, Defendant Scott Haas, the KDOC medical director, alleges that his involvement with Birdsong's medical treatment was limited to reviewing the record when Birdsong appealed his medical grievance at the KSR. Birdsong does not dispute this allegation. Review of the medical records field in the record confirms that Haas's involvement was limited as he explains.

*Shehee v. Luttrell*, 199 F.3d 295, 300 (1999), held that officials whose only "action involve[s] the denial of administrative grievances or the failure to act" are not liable under §1983. The court relied on cases indicating "that § 1983 liability must be based on more than respondeat superior, or the right to control employees." *Id*. The court further explained that liability under § 1983 must be based on more than *respondeat superior*, or the right to control employees. It must be based on active constitutional behavior not a "mere failure to act." *Id.*, quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999).

To the extent that Birdsong alleges a due process claim based

24

on an adverse ruling against him in the grievance process, his claim still fails. There is no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).[7]

B. <u>Monetary Considerations Not Relevant</u>

Birdsong alleged in his Complaint that the FCDC refused to authorize surgery because of monetary concerns. He claims that a denial of medical services based on financial considerations violates the Eighth Amendment.   That theory has been rejected as a basis for establishing liability under the Eighth Amendment.

In *Williams v. Prison Health Services*, 2007 WL 2915627 (N.D. Ind., October 2, 2007) (Not reported in F. Supp. 2d), Prisoner

---

[7]

Numerous Sixth Circuit decisions hold that there is no inherent constitutional right to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430 (6th Cir. (Mich.) October 30, 2003) (Not selected for publication in the Federal Reporter); *Overholt v. Unibase Data Entry, Inc*. 221 F.3d 1335, 2000 WL 799760, **3 (6th Cir. (Ohio) June 14, 2000) (Unpublished Disposition) ("In addition, Overholt did not state a viable First Amendment claim concerning the prison grievance procedure.  The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).  Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation."); *Mays v. Wilkinson*, 181 F.3d 102 (Table), 1999 WL 282690 (6th Cir.(Ohio) April 28, 1999) (same.)

Lonnie D. Williams alleged that the defendants were deliberately indifferent in not providing him with surgical treatment to correct his umbilical hernia.   The district court concluded that an umbilical hernia does constitute a serious condition.   Addressing the subjective component of the Eighth Amendment analysis, however, the district court rejected Prisoner Williams's claim that the prison defendants were motivated by financial concerns. The court stated:

> In a market economy, all for-profit corporations presumably are motivated by profit and the prevailing economic theory in this country holds that individuals are motivated by personal gain. Though it is unclear that Mr. Williams has admissible evidence that these defendants are so motivated, for the purpose of this motion the court accepts as true that they are. **Nevertheless, being motivated by personal gain creates no genuine issue of fact as to whether the defendants were deliberately indifferent to Mr. Williams' medical needs in these instances**.

*Williams*, 2007 WL 2915627 at * 1 (Emphasis Added). Plaintiff Birdsong has raised the same allegation here. Based on *Williams*, the Court finds that this argument lacks substance.

### C. No Fourteenth Amendment Due Process Claim

The defendants correctly note that to the extent Birdsong complains about medical care, he  has no substantive due process claim under the Fourteenth Amendment. Challenges to a prisoner's medical care must be asserted under the Eighth Amendment, not under a theory of substantive due process. *See Davis v. Brady,* 143 F.3d 1021, 1026 (6th Cir. 1998); *Cooleen v. Lamana*, 2007 WL 2687319 (3rd

26

Cir. 2007) (Not selected for publication in Federal Reporter). Any claims under the Fourteenth Amendment lack merit and must be dismissed.

The Court finds that based upon the record and cases discussed herein, there is no genuine issue of material fact under Fed. R. Civ. P. 56 with respect to the claims against defendants Ron Bishop, Larry Chandler and Scott Haas. Summary Judgment will be entered in their favor.

D. Eighth Amendment Claims Against "Medical" Defendants
Bowen, McConnell, Duvall and Kemen

The Eighth Amendment contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991). The test to determine whether [a defendant] acted with 'deliberate indifference' has an objective and subjective component." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The objective component requires the existence of a "sufficiently serious medical need." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). The subjective component requires a plaintiff to show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer v.*

27

*Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)) (internal quotation marks omitted).

Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id*. at 835-36. Deliberate indifference has also been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*).

Allegations of medical malpractice or negligent diagnosis and treatment are not cognizable under §1983. *See Estelle v. Gamble*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956,958 (6th Cir. 1989). The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness. *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994). An official must show a conscious disregard to a substantial risk that the inmate will experience serious harm. *Farmer v. Brennan*, 114 S. Ct. at 1979.

Applying these standards, it is reasonable to conclude that an umbilical hernia satisfies the objective prong of the analysis, which requires the existence of a serious medical condition. *See Williams v. Prison Health Services*, 2007 WL 2915627; *Horton v. Ward*, 123 Fed. Appx. 368, 372, 2005 WL 419814, 4 (10th Cir. (Okla.) February 23, 2005) (not selected for publication in the Federal

Reporter). The question then is, under the subjective prong, did the medical defendants deliberately disregard a known risk to the plaintiff?

Medical Defendants Bowen, McConnell, Duvall and Kemen collectively maintain that Birdsong's small, uncomplicated hernias have not been strangulated and that no bowel obstruction has occurred. They assert that Birdsong's condition has been entirely treatable through self-help measures, such as mild palpations. They emphasize that both FCDC and KSR medical providers have tried to explain to Birdsong that he can reduce the hernias himself when they arise. They contend that surgery is elective and is not medically necessary.

According to the defendants, Dr. Eckerline and Dr. Schwartz merely suggested or recommended surgery, or evaluation for surgery, as an option, noting that Dr. Eckerline stated in his April 5, 2006 report that Birdsong was observed in the ER as being pain free and completely asymptomatic. Accordingly, they collectively dispute that Birdsong suffers from a "serious medical condition" as defined by Eighth Amendment case law. They note that Birdsong disregards medical advice by engaging in excessive physical activity consisting of lifting weights and doing 600 sit ups per day. Drs. McConnell, Duvall, and Haas all concluded that such rigorous activity aggravated Birdsongs' hernia condition.

The defendants argue that both the FCDC and the KSR medical

29

records establish that Birdsong has been afforded continuing and proper medical care. In light of that medical treatment, they argue that they have not been deliberately indifferent to Birdsong's medical needs. They characterize the issue before the Court as merely a dispute as to the adequacy of medical care provided, which does not amount to an Eighth Amendment violation.

The Court has found other cases which involve prisoners who have claimed that prison officials were deliberately indifferent to the fact that they experienced umbilical hernias. In *McArty v. Correctional Medical Services, Inc.*, 2008 WL 536770 (E.D. Ark., February 25, 2008) (Slip Copy), Prisoner Randall McArty alleged that prison officials had violated his Eighth Amendment rights by refusing to authorize surgical repair for his umbilical hernia.

On numerous occasions, Prisoner McArty, just like Plaintiff Birdsong, was examined and treated by several different doctors employed as the prison's contract physicians (Correctional Medical Services, Inc., the same entity with whom the FCDC contracted,) In addressing the merits of McArty's Eighth Amendment claim, the district court noted that the medical records revealed that while McArty's umbilical hernia was diagnosed as being *reducible,* it was not considered to be *strangulated* [*Id.*,*3].[8]  McArty's medical

---

[8]

Understanding the distinction between a "strangulated" hernia and a "non-strangulated" hernia is necessary for this discussion. To explain the distinction, the Court refers to the medical authority from "Answers.com/topic/umbilical-hernia-repair,"which

30

records did not indicate that surgery was required [*Id*]. One of the defendant physicians had recommended an abdominal binder [*Id*].

In *McArty*, the Court concluded that an umbilical hernia constitutes a serious medical condition under the Eighth Amendment's framework, which finding satisfies the objective standard of the deliberate indifference standard. However, the district court determined that McArty had not satisfied the subjective standard which requires a disregard for a known risk to the prisoner. Summarized, the district court was not persuaded that the prison's subsequent refusal to authorize the repair surgery, based upon a mere *recommendation* of same, was a violation of the Eighth Amendment [*Id*]. It would be senseless to recharacterize the Arkansas district court's well-worded conclusion on this issue, which was as follows:

> **Although Plaintiff contends that Han prescribed surgery on February 14, 2006, a review of that specific medical record reveals that Han only recommended that surgery be considered. . . and Scott saw Plaintiff after Han's**

---

Plaintiff Birdsong filed in the record [*See* Record No. 66, attachments]. According to Answers.com:

> "Hernias by themselves may be asymptomatic, but nearly all have a potential risk of having their blood supply cut off (becoming strangulated). If the hernia sac contents have their blood supply cut off at the hernia opening in the abdominal wall, it becomes a medical and surgical emergency."

Record No. 66-2, p.7. Birdsong's medical records do not indicate that his umbilical hernia became strangulated at any time relevant to this action, or that his bowel activity was impaired.

31

**recommendations.** Likewise, Plaintiff's contention that Jan Truett, RNP, directed that Plaintiff be seen for his hernia is not accurate. Rather, Truett instructed that Plaintiff be seen by a physician in two weeks for evaluation of his prostate. . . . **Thus, it does not appear that any physician has ever prescribed surgery for Plaintiff's hernia**, and Anderson's declaration indicates that in many cases, the risks of surgery outweigh the potential benefits. **Thus, although Plaintiff himself has reached the conclusion that he should be given surgery, it does not appear that any physician has prescribed it. Thus, the Court is left with Plaintiff's disagreement with his medical care, which is not actionable.**

*Mcarty v. CMS, Inc*., 2008 WL 536770 at *3.

The facts in *McArty* are amazingly similar to Plaintiff Birdsong's facts.  First, just like Prisoner McArty's umbilical hernia, Plaintiff Birdsong's hernia was consistently documented as being a reducible hernia. Second, just like Prisoner McArty's umbilical hernia, Plaintiff Birdsong's hernia was consistently documented as *not* being strangulated. Third, just as in *McArty*, one physician *recommended*, but did not *order* surgery to correct the hernia condition.   Fourth, just as in *McArty*, after the recommendation was made, other prison physicians later examined Plaintiff Birdsong and determined that surgery was not warranted.

Here, Plaintiff Birdsong strenuously contends that Dr. Eckerline ordered a surgical repair of his umbilical hernia on April 5,2006.  He further contends that Dr. Richard Schwartz's October 25, 2006, letter to Dr. Rex McConnell constituted an "order" for surgical repair of his hernia.  Birdsong claims that the defendants have conspired to deny him necessary surgical

32

treatment despite medical orders to the contrary. Dr. Eckerline's exact statement when discharging Birdsong on April 5, 2006 was, however:

> We have **suggested** followup in the general surgery clinic for **evaluation** and repair and explicit instructions to return should he have any symptomology. Currently he is reduced and asymptomatic.

[Record No. 2, p.9] (Emphasis added).

Dr. Schwartz's precise statement on the issue of repair/surgery was as follows:

> **There is no evidence of any type of bowel incarceration and/or obstruction/strangulation at this time**. He is fairly tender upon exam. I do **recommend** repair within the next month or two.

[Record No. 66-2] (Emphasis added).

Based on *McArty*, it is clear that a mere recommendation or suggestion of a surgical procedure does not equate into either an order for surgery or a clear directive that surgery is a medical necessity. Thus, none of the medical defendants violated Birdsong's Eighth Amendment rights by refusing to authorize a procedure that had not been ordered as medically necessary.

This conclusion is particularly true in Birdsong's case. After the examination on April 5, 2006 by Dr. Eckerline, and the examination on October 25, 2006 by Dr. Schwartz, Birdsong was examined numerous times by qualified physicians employed by both the FCDC and the KSR. These medical providers determined that the hernia was reducible; that it was not strangulated; and that

33

surgery was  not required.

Birdsong has not offered any affidavits from any medical professional which would substantiate his claim that surgical repair was a medical necessity. He offers only Dr. Eckerline's April 5, 2006 ER notes and Dr. Schwartz's October 25, 2006, letter. Neither are sworn documents, as is the affidavit submitted by Dr, McConnell.[9]

Even assuming that the veracity of the Eckerline report and Schwartz letter is not disputed, the Court has already explained that these documents were insufficient to substantiate an Eighth Amendment claim. Neither document unequivocally *ordered* surgery nor established that surgical repair was a medical necessity for the reduction of Birdsong's recurring hernias.

In order to show a constitutional violation based on an alleged delay in medical treatment, the prisoner must place verifying medical evidence into the record establishing the detrimental effect of the delay. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). Birdsong has not presented any medical evidence regarding effect of the delay or refusal to authorize the surgery.  Simply put, the Ekerline report and

---

[9]

In the *Williams* decision, *supra*, Williams and his wife and offered their own opinions and testimony, and hearsay testimony that other doctors had stated that repair of hernia was medically necessary  [*Id*. at *3]. The district court noted the absence of affidavits in the record from the doctors. The court explained that the plaintiffs' testimony was not a sufficient substitute [*Id*].

34

Schwartz letter do not establish that failure to provide the suggested surgical repair would have a detrimental effect on Birdsong.

Another case involving the issue of a prisoner alleging denial of medical treatment for an umbilical hernia condition is the afore-mentioned decision rendered in *Horton v. Ward*. Like Birdsong, Horton alleged that the prison acted with deliberate indifference. The district court granted summary judgment to the defendants and the Tenth Circuit affirmed. The appellate court noted that Horton cut his umbilical hernia in November 2001 during a self-mutilation episode that occurred in the prison. The court noted that the resulting self-inflicted wound aggravated the hernia and created a high risk of infection. *Horton,* 123 Fed. Appx. at 373.[10]

Horton was scheduled to have his umbilical hernia surgically repaired in August 2002, but, due to an error by the prison nursing staff, he missed his appointment for the surgery. *Id*. However, like Birdsong's case, the prison medical staff <u>subsequently reevaluated</u> the potential risks and benefits that were associated with a surgical repair of Horton's umbilical hernia. Two doctors eventually determined that Horton was not a good candidate for surgery due to the high risk of infection caused by his prior

---

[10]
The factual similarity to Plaintiff Birdsong engaging in an excessive, condition-aggravating exercise routine cannot be overlooked.

35

self-inflicted injury and his liver problems. *Id*. In affirming the grant of summary judgment, the Tenth Circuit stated:

> Accordingly, while plaintiff may personally disagree with the decision not to reschedule the surgery, "[t]he record reflects that plaintiff received extensive and regular medical care [with regard to his umbilical hernia], and the undisputed facts reflect that plaintiff cannot show that such care evidence[d] deliberate indifference to his medical needs."

*Id* (citing the district court record).

In Birdsong's case, it is documented that he received ongoing medical treatment at both the FCDC and the KSR. Thus, the medical defendants did not act with either a "culpable state of mind" or with wantoness, under subjective prong of the Eighth Amendment. Birdsong's dispute lies solely with the adequacy of the treatment and the course of treatment prescribed.

Such a dispute does not rise to the level of an Eighth Amendment claim under *Westlake v. Lucas*, 537 F.2d at 860, where the distinction was made between a complaint alleging a complete denial of medical care and one where the prisoner was simply second guessing medical judgments and attempting to "constitutionalize claims which sound in state tort law."[11] *See also Durham v. Nu'Man*

---

[11]

There are numerous unpublished Sixth Circuit opinions which adopt *Westlake v. Lucas*' holding. *See Wilson v. Wilkinson*, 62 Fed. Appx. 590, 2003 WL 1795812 (6th Cir. (Ohio) April 1, 2003) (Not selected for publication in the Federal Reporter); *Wooley v. Campbell*, 63 Fed. Appx. 789, 2003 WL 1795708 (6th Cir. (Tenn.) March 27, 2003); *Wright v. Sapp*, 59 Fed. Appx. 799, 2003 WL 1465184 (6th Cir. (Ky.) March 17, 2003); and *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. (Ky.) January 30, 2003). *See Jennings v.*

97 F.3d 862, 869 (6th Cir. 1996) ("The Plaintiff's complaints go to the adequacy of the medical care; they do not raise an issue of unnecessary and wanton infliction of pain as required under *Estelle*. They were not deliberately indifferent to a serious medical need of the Plaintiff.").

In *Alexander v. Federal Bureau of Prisons*, 227 F. Supp.2d 657 (E. D. Ky. 2002), this Court addressed a prisoner's challenge to his medical treatment. Judge Danny C. Reeves entered summary judgment in favor of the Bureau of Prisons, and stated:

> While it appears that the plaintiff has not gotten what he wants, what he wants is not the issue. Ordering a specific type of surgery is not the appropriate function of this Court. The Court agrees with the defendants that, at most the plaintiff has alleged a difference in opinion between the plaintiff and his health care providers regarding the expediency of a specific treatment. This does not generally create a constitutional claim.

*Id*. at 666.

Here, Birdsong has ignored the repeated instructions to reduce his hernia by means of self-administered palpation. Birdsong rejects conservative chronic care treatment which has been offered to him, demanding a surgical procedure which he deems to be preferable. The medical defendants agree that Birdsong's exercise

---

*Al-Dabagh*, 97 Fed. Appx. 548, 550, 2004 WL 957817, 2 (6th Cir. (Mich.) 2004) ("Jennings's personal opinion that his care was substandard, or that he was not given the treatment he requested because of the costs associated with the treatment, raises claims of state-law medical malpractice, not constitutionally defective medical care indifferent to Jennings's serious medical needs. *See Westlake*, 537 F.2d at 860-61.").

37

regime of 600 sit-ups a day, and lifting heavy weights, aggravated the hernia condition. He offers nothing to dispute that conclusion. Finally, the defendants legitimately argue that Plaintiff Birdsong received far more medical care than most persons who are not incarcerated.

At best, Birdsong has alleged a state court medical malpractice claim, not a valid Eighth Amendment claim *See Westlake*, 537 F.2d at 860-61. The Court finds that Birdsong has failed to satisfy the subjective prong of the deliberate indifference standard, and thus, he has failed to establish deliberate indifference to his medical needs at the hands of Defendants Bowen, McConnell, Duvall and Kemen. Discussion of qualified immunity is not required.

As the Supreme Court dictated in *Celotex*, summary judgment is justified "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 at 322. The Court will grant summary judgment in favor of the remaining four defendants: Defendants Jonathan Bowen; Rex McConnell, M.D.; Lawrence Duvall, M.D.; and Frederick Kemen, M.D..

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

38

(1)  The "Motion for Summary Judgment" [Record No. 75] filed by Defendant Ron Bishop is **GRANTED.**

(2)  The "Motion for Summary Judgment" [Record No. 82] filed by Defendants Rex McConnell, M.D. and Jonathan Bowen is **GRANTED.**

(3)  The "Motion for Summary Judgment" [Record No. 84] filed by Defendants Larry Chandler and Scott Haas is **GRANTED.**

(4)  The "Motion for Summary Judgment" [Record No. 85] filed by Defendants Frederick Kemen, M.D., and Lawrence Duvall, M.D., is **GRANTED.**

(5)  This action is **DISMISSED WITH PREJUDICE** and Judgment shall be entered contemporaneously with this Order in favor of the named defendants.

This the 26th day of November, 2008.



Signed By:

**_Joseph M. Hood_**

**Senior U.S. District Judge**